IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO.  2:10cv975-CSC |
| | ) | (WO) |
| THOMAS E. NEWTON, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

_____

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO.  2:10cv976-CSC |
| | ) | (WO) |
| NEWTON OLDACRE | ) | |
| MCDONALD, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.  Introduction**

Now at issue in these cases is the question of interest on the award of damages.  On September 25, 2012, the court entered an opinion that the plaintiff Bank was entitled to recover damages from the defendants on its breach of contract claim.  *See* Doc. # 89.  The court also concluded that NOM was entitled to recover from the Bank on its breach of contract counterclaim.  *Id.*  The court left open the issue of prejudgment interest which the court now resolves.

The court has jurisdiction over these claims pursuant to its diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1). Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to a United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

In determining the issue of liability, the court held that "the plaintiff [wa]s entitled to recover the property proceeds remitted to NOM from the Borrowers from November 20, 2009, until the Bank redirected the rents in July 2010, which the court conclude[d] from the evidence totals $1,063,827.52, plus interest pursuant to ALA CODE § 8-8-8 (1975)." (Doc. # 89 at 28). The court also held that NOM was entitled to recovery damages in the amount of "$20,323.00, plus interest" on its breach of contract claim against the plaintiff. (*Id* at 35). The court then directed the parties to attempt to resolve the amount of prejudgment interest owed to the parties, and to submit briefs containing interest calculations if an agreement could not be reached. (*Id*. at 36) The parties were able to reach an agreement on the amount of interest owed to NOM but were unable to reach an accord on interest owed to the Bank.

The parties agree that, on the damages award of $20,323.00, NOM is entitled to prejudgment interest at a rate of 10% per annum pursuant to the Property Management Agreements. (Docs. 90 & 91). The parties calculated the interest owed from September 30, 2010 until October 16, 2012 to be $4,222.86 with a per diem rate of $5.65. Accordingly, the court will enter judgment in favor of NOM and against the Bank on its breach of contract

claim in the amount of $20,323.00 in compensatory damages and $4335.86[1] in prejudgment interest.

The court now turns to the question of prejudgment interest owed the Bank on its' breach of contract claim. The plaintiff Bank asserts that it is entitled to prejudgment interest at a rate of 12.52% based on the "Default Rate" contained within the Loan Agreements. The defendants disagree and assert that the statutory rate of 6% should apply. *See* ALA CODE § 8-8-1 (1975).

The Loan Agreements define the "Default Rate" as "the lesser of (a) the maximum rate of interest allowed by applicable law, and (b) five percent (5%) per annum of the Contract Rate."[2] (Pl's Tr. Exs. 1, 6, 11 & 16). Section 2.2 of the Loan Agreement provides that "[w]hile any Event of Default exists, the Loan shall bear interest at the Default Rate." (*Id*.). Relying on this statement, the plaintiff argues that because the court found that the defendants were remitting rent payments to the Borrowers instead of to the Bank during the period when the loans were in default, and those rent payments should have been used to pay debt service, the default rate of interest of 12.52% contained in the loan documents should be applied to the monies owed the Bank. The court disagrees.

In this litigation, the plaintiff Bank did not seek to recover from the Borrowers the

---

[1] This amount includes interest from September 30, 2010 until October 16, 2012 in the amount of $4222.89 plus $113.00 in interest since October 16, 2012, calculated at 20 days at a per diem rate of $5.65 for a total amount of $4,335.86.

[2] The Contract Rate is defined by the Loan Agreements as 7.52%. *See* Pl's Tr. Exs. 1, 6, 11 & 16.

3

balance of the unpaid principal of the four loans.[3]  The Bank sought recovery on the basis that the Joinder Parties breached the Joinder Agreements and Joinder Parties were liable for the misapplied rents monies by failing to remit the rent proceeds from the Borrowers' properties after being notified that the licenses to collect rents were revoked.  This distinction is crucial because while the Default Rate applies when the Loans are in default, the Loan Agreements specifically provide that the *Loans* bear interest at the Default Rate.  The Loan Agreements do not provide that the *rents and property proceeds* also bear interest at the Default Rate.

In concluding that the defendants had breached Section 12.1(f) of the Loan Agreements, the court held that NOM had improperly retained or utilized *the rents or proceeds from the properties*.  The court specifically concluded that NOM's actions contravened Section 5 of the Manager Agreements in that

> (b) as a result of such Event of Default, Lender has revoked Borrower's license to collect the Property Proceeds pursuant to the terms of the Assignment of Leases and Rents (part of the Loan Documents)*, Property Manager agrees (i) not to pay any of the Property Proceeds to the Borrower without the prior written approval of Lender, (ii) to pay the Property Proceeds in payment of the Indebtedness (as such term is defined in the Mortgage or to otherwise pay such Property Proceeds as instructed by the Lender. . .*

(*Id.*, at Section 5) (emphasis added)

The court did not conclude that section 5 required NOM to pay the property proceeds to the Bank in payment of indebtedness.  Rather, the court specifically found that section 5

---

[3]  It is undisputed that the Loan Agreements with the Borrowers were non-recourse loans secured by the Borrower Properties which have all been foreclosed on to recoup the balance of the unpaid loans.

precluded the Borrowers "from repaying NOM without written permission of the Bank." The court stated that "the real issue before the court [wa]s the propriety of NOM's actions in repaying itself before paying the plaintiff." The court clearly concluded that "[w]hen NOM received written notice in November 2009 that the Borrowers were in default *and* that the licenses to collect rents were revoked, the Borrowers were prohibited from paying any of the property proceeds to NOM without the prior written approval of the Bank, *and* NOM was required to pay the property proceeds to the Bank in payment of the Indebtedness, *or* to hold the proceeds for the Bank." This is not a case in which the court concluded that the plaintiff was owed the unpaid principal balances on the loans, and thus, applies the default rate of interest to those balances. The finding of the court was plainly that "[t]he loan documents, coupled with the Acknowledgments of the Property Manager, elevate[d] the plaintiff's right to receive the property proceeds above NOM's right to retain the property proceeds." It was on this basis that the court concluded that the plaintiff was entitled to recover on its breach of contract claim. The court specifically concluded that the breach occurred not when the Borrowers defaulted on their loan obligations, but rather when "NOM continued to use property proceeds to repay itself monies advanced to the Borrowers *instead of using those funds to make debt payment or holding those funds for the benefit of the Bank*." (Doc. # 89) (emphasis added). Because NOM was required to hold the proceeds for the plaintiff, it was not permitted to pay any proceeds to the Borrowers without prior written approval from the plaintiff.

Although the plaintiff now argues that NOM was required to pay back the indebtedness, under the Loan Agreements, the Bank retained the right to determine the priority of payment of debt.  "Any rents collected after the revocation of the license herein granted may be applied toward payment of the Indebtedness in *such priority and proportion as Lender, in its discretion, shall deem proper*."  (Pl's Tr. Exs. 3, 8, 13 & 18, Section 6) (emphasis added).  While NOM was required to hold the rents for the Bank, only the Bank could determine whether to use those funds to pay down the indebtedness.  Thus, the court concluded that when the Borrowers and NOM withheld the property proceeds, they breached Section 12.1 of the Loan Agreements by misapplying funds, failing to properly apply the rent proceeds, and interfering with the Bank's exercise of its rights to the rent proceeds.

The Default Rate applies to the Loans when the Borrowers are in default.  However, the loans in these cases were also non recourse loans secured by the properties, not personally guaranteed by the Borrower entities.  Once the Borrowers defaulted, and until the Borrower Properties were foreclosed, the *Loans* continued to accrue interest at the  Default Rate.  The Loan Agreements do not specify that the Default Rate will also apply to any rents, profits and other amounts collected by the Borrowers or Joinder Parties.  Consequently, the court concludes that the Default Rate stated in the Loan Agreements does not apply to the rents, profits and other amounts awarded to the Bank as improperly withheld by the defendants.

Under Alabama law, in cases where "no written contract controls the interest rate  . . . the legal rate of pre-judgment interest is 6 percent per annum."  *Mega Life & Health Ins.*

6

*Co. v. Pieniozek*, 585 F.3d 1399, 1407 (11th Cir. 2009) *quoting Rhoden v. Miller*, 495 So. 2d 54, 58 (Ala. 1986).  *See also Comeq, Inc. v. Mitternight Boiler Works, Inc.*, 456 So. 2d 264, 269 (Ala. 1684);  *Burgess Mining & Construction Corp. v. Lees*, 440 So. 2d 321, 338 (Ala. 1983); *Bressler v. Dudley*, 694 So. 2d 1355, 1359 (Ala. Civ. App. 1996).  Because the Loan Agreements do not specify a higher interest rate, pursuant to ALA CODE § 8-8-1 (1975), the court concludes that the statutory prejudgment interest rate of six percent (6%) per annum applies to the award of damages owed the Bank.  At the statutory prejudgment interest rate of 6%, the interest owed from September 30, 2010 until October 16, 2012 is $162,602.52 with a per diem rate of $177.30.  Accordingly, the court will enter judgment in favor of the Bank and against the defendants on its breach of contract claim in the amount of $1,063,827.52 in compensatory damages and $166,148.52[4] in prejudgment interest.

A separate final judgment will enter.

Done this 5th day of November, 2012.

_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

---

[4] This amount includes interest from September 30, 2010 until October 16, 2012 in the amount of $162,602.52 plus $3546.00 in interest since October 16, 2012, calculated at 20 days at a per diem rate of $177.30 for a total amount of $166,148.52.